IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Philip A. Brimmer**

Civil Action No. 08-cv-2127-PAB-BNB

STANDARD BANK PLC,

Plaintiff,

v.

VERO INSURANCE LIMITED,

Defendant,

RUNGE, INC. f/k/a
RUNGE MINING, INC. and d/b/a
PINCOCK ALLEN & HOLT,

Nominal Defendant.

_____

**ORDER**
_____

        Plaintiff Standard Bank PLC ("Standard") filed the present action against

defendant Vero Insurance Limited ("Vero") seeking a declaratory judgment in order to

compel Vero to defend one of its insureds in a separate case against Standard.  The

matter is currently before the Court on Vero's "Motion to Dismiss with Prejudice"

[Docket No. 22].  The Court's jurisdiction over this case is premised upon diversity of

citizenship in conjunction with an amount in controversy exceeding the statutory

minimum under 28 U.S.C. § 1332.

## I.  BACKGROUND

### A.  Factual Background

On September 21, 2007, Standard, an investment bank incorporated in England and Wales, commenced an action in this district against Runge, Inc., formerly known as Runge Mining, Inc., and doing business as Pincock Allen & Holt (collectively "Pincock"), a Colorado corporation, asserting claims of negligent misrepresentation and professional negligence.  *See Standard Bank PLC v. Runge Inc.*, No. 07-cv-1989-RPM (assigned to Senior Judge Richard P. Matsch).  These claims derive from services Pincock provided to Standard surrounding a loan to another party for the acquisition of a mining enterprise.

Vero, an Australian insurance company, issued a professional indemnity policy (the "Policy") naming as the insured, among others, Pincock and Runge Ltd., the Australian parent entity of which Pincock is a wholly-owned subsidiary.  Standard, which is not named as an insured under the Policy, is seeking a declaration that the claims at issue in the tort case before Judge Matsch are covered by the Policy.  Standard then requests that this Court determine that Vero has a duty to defend Pincock in that case and thus make the funds provided for under the Policy available for settlement and satisfaction of any judgment.  Finally, Standard asks the Court for a declaration that Standard's claims against Pincock in the case before Judge Matsch constitute "a charge on Vero's insurance moneys" within the meaning of the New South Wales Law Reform (Miscellaneous Provisions) Act of 1946 - Section 6.  None of the parties named

as insureds under the Policy are seeking any of the relief against Vero that Standard seeks, either in the action pending before Judge Matsch or in the case before me.

Of significance here, the Policy contains a provision entitled "Governing Law" which states "This policy shall be governed in accordance with the laws of Australia. Any disputes related to interpretation will be submitted to the exclusive jurisdiction of the courts of Australia." Mot. to Dismiss with Prejudice [Docket No. 22] ("Vero's Mot. to Dismiss"), Ex. 1 (Aff. of Quentin M Piper ("Quentin Aff."), Ex. A ("The Policy") at 20.

Standard alleges that its seemingly anomalous claim, whereby it seeks to enforce a contract that it is neither a party to nor a third party beneficiary of, is permitted under Section 6 of the New South Wales Law Reform (Miscellaneous Provisions) Act of 1946. _____

## B. Procedural Background

On August 27, 2008, Standard filed this action against Vero in the District Court of Jefferson County, Colorado. *See* Verified Notice of Removal [Docket No. 1], Ex. 1 (Compl. and Jury Demand ("Compl.")). On October 1, 2008, Vero removed the case to this Court under 28 U.S.C. § 1441. *See* Verified Notice of Removal. On October 22, 2008, in the case before Judge Matsch, Vero moved to consolidate that case with the present one [Docket 07-cv-01989-RPM, No. 59]. Judge Matsch denied consolidation [Docket 07-cv-01989-RPM, No. 65].

On October 24, 2008, in lieu of filing an answer to Standard's complaint, Vero filed the motion to dismiss that is the subject of this Order. *See* Vero's Mot. to Dismiss. Vero's motion to dismiss asserts four potential grounds for dismissal of Standard's

claims: (1) *forum non conveniens*, or alternatively, pursuant to the Policy's forum-selection clause; (2) the Court lacks personal jurisdiction over Vero; (3) Standard's failure to state a claim under Australian law; (4) Standard's failure to state a claim under Colorado law.  Pincock, a "nominal defendant" in this action, joined in Vero's motion to dismiss [Docket No. 32].  By Minute Order of January 14, 2009, and pursuant to authority under *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, I limited the briefing on the motion to dismiss to the *forum non conveniens* issue. 549 U.S. 422, 432 (2007) ("A district court . . . may dispose of an action by a *forum non conveniens* dismissal, bypassing questions of subject-matter and personal jurisdiction, when considerations of convenience, fairness, and judicial economy so warrant.").  On January 27, 2009, Vero filed a Notice of Supplemental Authority touching on the *forum non conveniens* and forum-selection clause issues [Docket No. 61].  On February 2, 2009, Standard responded to the motion to dismiss, addressing both the *forum non conveniens* and the forum-selection clause topics [Docket No. 69].  On February 17, Vero filed its reply in support of its motion to dismiss [Docket No. 74].  This issue is fully briefed and ripe for review.

## II.  ANALYSIS

### A.  *Forum Non Conveniens*

#### 1.  *Legal Standard*

"Under the federal doctrine of *forum non conveniens*, when an alternative forum has jurisdiction to hear a case, and when trial in the chosen forum would establish oppressiveness and vexation to a defendant out of all proportion to the plaintiff's

convenience, or when the chosen forum is inappropriate because of considerations affecting the court's own administrative and legal problems, the court may, in the exercise of its sound discretion, dismiss the case, even if jurisdiction and proper venue are established." *Am. Dredging Co. v. Miller*, 510 U.S. 443, 447-48 (1994) (internal quotation marks, alteration marks, and omission marks omitted).

In the Tenth Circuit, *Gschwind v. Cessna Aircraft Co.*, 161 F.3d 602 (10th Cir. 1998), instructs district courts on how to approach the *forum non conveniens* determination. *Yavuz v. 61 MM, Ltd.*, 465 F.3d 418, 426 (10th Cir. 2006). Convenience of the trial stands as the overall goal of the *forum non conveniens* inquiry. *Gschwind*, 161 F.3d at 605 (citing *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 256 (1981)). Generally, that inquiry consists of the examination of two threshold questions, followed by the analysis of private and public interest factors. The first threshold question is whether there is an adequate alternative forum in which the defendant is amenable to process. *Id.* The second question is whether foreign law applies. *Id.* (citing *Rivendell Forest Prods., Ltd. v. Canadian Pac. Ltd.*, 2 F.3d 990, 994 (10th Cir.1993)). If the Court answers either of the two threshold questions is the negative, then *forum non conveniens* is inapplicable and the case may not be dismissed on those grounds. *Id.* at 605-06.

On the other hand, if the Court answers both questions in the affirmative, it then weighs various private and public interests. *Id.* at 606. The private interest factors that a court is to consider are: (1) the relative ease of access to sources of proof; (2) the availability of compulsory process for compelling attendance of witnesses; (3) the cost

of obtaining attendance of willing non-party witnesses; (4) the possibility of a view of the premises, if appropriate; and (5) all other practical problems that make trial of the case easy, expeditious, and inexpensive. *Id.* (citing *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947)). The public interest factors that a court is to consider include: (1) administrative difficulties of courts with congested dockets which can be caused by cases not being filed at their place of origin; (2) the burden of jury duty on members of a community with no connection to the litigation; (3) the local interest in having localized controversies decided at home; and (4) the appropriateness of having diversity cases tried in a forum that is familiar with the governing law. *Id.* (citing *Gulf Oil*, 330 U.S. at 508-09).

An overarching factor in the *forum non conveniens* analysis is that "normally there is a strong presumption in favor of hearing the case in the plaintiff's chosen forum." *Id.* (citing *Piper Aircraft*, 454 U.S. at 255). This presumption can be rebutted "only when the private and public interest factors clearly point towards trial in the alternative forum." *Id.* Because the convenience of a forum is no longer assumed where the plaintiff is a foreign party, the presumption in favor of plaintiff's choice of forum is attenuated somewhat in those cases. *Piper Aircraft*, 454 U.S. at 256*; see Gschwind*, 161 F.3d at 606. As a result, when the plaintiff is foreign, the party asserting *forum non conveniens* needs to make a lesser showing regarding the private and public interest factors. *Gschwind*, 161 F.3d at 606.

## 2. Threshold Questions

### a. Whether There Is an Adequate Alternative Forum in Which the Defendant Is Amenable to Process.

The first threshold question in a *forum non conveniens* analysis requires that there be an alternative forum which is both available and adequate. *Gschwind*, 161 F.3d at 606. The party claiming that the existing forum is inconvenient – Vero in the present case – bears the burden of proving both the availability and the adequacy of the alternative forum. *See id.* The availability requirement ordinarily is satisfied where the defendant is "amenable to process" in the alternative forum. *See id.* (citing *Piper Aircraft*, 454 U.S. at 254 n.22). A concession to that fact is generally sufficient. *See id.* Therefore, Vero's concessions regarding its amenability to process in Australia should be sufficient to establish that forum as available. However, the Tenth Circuit in *Gschwind* also evaluated whether the proposed alternative forum would, in fact, accept jurisdiction. In so doing, the court asked whether courts in that forum jurisdiction over the type of case at issue and the parties.

Here, there does not appear to be any disagreement with the contention of Vero's Australian law expert that Australian courts will hear declaratory judgment cases regarding insurance coverage. Furthermore, Standard relies almost exclusively on an Australian law, the New South Wales Law Reform (Miscellaneous Provisions) Act of 1946, as the basis for its claim. Finally, Australian courts apparently will hear cases brought by foreign entities such as Standard. Therefore, Vero has met its burden in proving that Australian courts are available as an alternative forum for Standard's claim.

The only argument that Standard has raised regarding the adequacy of Australia as an alternative forum is to suggest that Australia may not grant the relief it seeks. Standard does not raise any other concerns regarding the adequacy of Australian courts, including any statute of limitations problems. Standard bases its contention about the inadequacy of Australian courts on the allegedly contradictory remarks of Vero's Australian law expert who expressed his belief that Australian courts would have no power to grant the relief that Standard seeks. This, however, is a problem not with the Australian courts' adequacy, but with the adequacy of Standard's complaint. As the Tenth Circuit explained in *Gschwind*, "the remedy provided by the alternate forum need not be the same as that provided by the American court; only when the alternate forum's remedy is 'so clearly inadequate . . . that it is no remedy at all' should the unfavorable change in law weigh in the court's determination." 161 F.3d at 607 (citing *Piper Aircraft*, 454 U.S. at 254-55) (omission in original). If it is true that Australian courts are inadequate because Standard does not have a cognizable claim under Australian law, then it also lacks a cognizable claim before this Court when it applies Australian law. Rather than having a lesser remedy in Australia, Standard would have the exact same remedy – none.

I conclude that Vero has met its burden in proving that Australia stands as an available and adequate alternative forum for Standard's claims. Consequently, I answer the first threshold question – whether there is an adequate alternative forum in which the defendant is amenable to process – in the affirmative.

### b. Whether Foreign Law Applies

Neither party appears to contest that foreign law applies in this case.  The Policy was negotiated between two Australian entities and issued in Australia.  More importantly, the Policy's choice of law provision makes it clear that Australian law governs its application.  I conclude that Vero has met its burden of proving that foreign law, that of Australia, applies.  Therefore, I also answer the second threshold question – whether foreign law applies – in the affirmative.  With both threshold questions answered in the affirmative, I now proceed to the balancing of the various private and public interests pursuant to the conventional *forum non conveniens* analysis.

### 3. *Plaintiff's Choice of Forum*

As a preliminary matter, in evaluating the private and public interest factors, the strong presumption normally granted in favor of hearing a case in the plaintiff's chosen forum is not operative in the present case.  Because Standard is a foreign party, Vero need not show that the private and public interest factors clearly point towards trial in the alternative forum.  Instead I may pay less deference to Standard's choice of Colorado as its venue for this action.  As a consequence, Vero may make a lesser showing that the balance of the private and public interest factors tilt in favor of Australia.

Standard cites a Second Circuit case, *Iragorri v. United Technologies Corp.*, 274 F.3d 65 (2d Cir. 2001), to argue that the rationale behind the deference rule and its exception is to prevent forum shopping.  Standard urges that, because forum shopping

is not evident in this case, the general preference in favor of a plaintiff's chosen forum should persist.

Standard's argument is unconvincing. In establishing the rationale behind the presumption and the exception for foreign plaintiffs, I look instead to statements in *Piper Aircraft*, the Supreme Court case that the Tenth Circuit cites in articulating both the preference for a chosen forum and the exception regarding foreign plaintiffs. *See Gschwind*, 161 F.3d at 606 (citing *Piper Aircraft*, 454 U.S. at 255-56). As the Court in *Piper Aircraft* explained, the rule and the exception result from assumptions regarding the convenience of the chosen forum; a party's home forum is assumed to be more convenient, and a foreign forum is not. *Piper Aircraft*, 454 U.S. at 255-56. That rationale is germane to the current case. Standard, a British company, is not entitled to an assumption that Colorado is more convenient than Australia.

The fact that Standard is also involved in a tort case in this district does not tilt the balance either. The mere existence of related litigation, particularly when it involves separate and discrete issues, is insufficient to drastically shift the entire *forum non conveniens* analysis in Standard's favor. I also note that Judge Matsch has previously determined that the two cases have insufficient connection to warrant consolidation. Therefore, there is no strong presumption in favor of Colorado as Standard's chosen forum.

### 4. Private Interest Factors

#### a. Relative Ease of Access to Sources of Proof

Vero urges that most, if not all, sources of documentary and testimonial proof are located in Australia, where the Policy was formed and where the contracting parties are located. Although Standard argues that access to sources of proof is greater in Colorado, it also asserts that this case is a straightforward matter of reviewing its complaint before Judge Matsch with an eye toward whether the claims asserted are covered.

The evidence regarding the first issue in Standard's claim – the meaning and coverage of the Policy – is overwhelmingly based in Australia. The parties that negotiated the Policy as well as their files are all in Australia. Furthermore, in determining whether the New South Wales law upon which Standard relies so heavily for its claim is indeed applicable to the Policy, the evidence establishing jurisdiction over Vero is in Australia.

On the other hand, the evidence regarding the second issue in Standard's claim – the type of claim asserted in Standard's tort case against Pincock – is overwhelmingly based in Colorado. I do not agree with Standard that this case is as simple as a mere document comparison. If Standard is able to establish its standing to enforce the Policy, then details outside of the opening pleadings from the tort case against Pincock will be necessary to establish Vero's duty to defend.

In the end, the evidence in Australia consists of both documentary and testimonial evidence. On the other hand, the evidence in Colorado derives almost

entirely from the record of the tort case and thus should be in document form.

Therefore, I find that Australia is the more convenient forum.

### b. Availability of Compulsory Process for Compelling Attendance of Witnesses

The availability of compulsory process also weighs slightly in favor of an Australian forum for this litigation. Australia is the likely home of all of the witnesses that may need to be compelled to attend. The witnesses that may be in Colorado or the United States will come from the case before Judge Matsch. Standard will have access to their testimony in that case. As such, compulsory process should not be a obstacle in an Australian forum. On the other hand, the testimony of the Australian witnesses has not been obtained yet and compelling them to appear before this Court or other proceedings may prove to be a challenge.

### c. Cost of Obtaining Attendance of Willing Non-party Witnesses

There do not appear to be many non-party witnesses whose attendance will be required. However, because, as mentioned before, the evidence from Colorado should be almost entirely reduced to document form, there should be no need to obtain the attendance of willing non-party witnesses with regard to the Colorado aspects of the case. Bringing witnesses to Colorado from Australia promises to impose a greater cost.

### d. Possibility of a View of the Premises, If Appropriate

There are no premises which have a significant bearing on the resolution of this case. Therefore, this factor is not relevant to present controversy.

**e. All Other Practical Problems That Make Trial of the Case Easy, Expeditious and Inexpensive.**

At this point in the case, it remains unclear whether this Court can exercise personal jurisdiction over Vero. There is no evidence that Vero has any permanent presence in the United States. Therefore, if Standard were to succeed in this case by getting the declaratory judgment it seeks, it would then be required to enforce that judgment in Australia. At which point, an Australian court may conduct a de novo review of this Court's ruling and reasoning on Australian law, in essence repeating the same process.

On the other hand, if an Australian court were to find in Standard's favor, it would have jurisdiction over Vero to force its compliance with the court's orders. Furthermore, courts in this country, in all likelihood, would defer to an Australian court's interpretation of Australian law without undergoing a de novo review. Therefore, this factor weighs strongly in favor of an Australian forum for this case.

**5. Public Interest Factors**

**a. Administrative Difficulties of Courts with Congested Dockets Which Can Be Caused by Cases Not Being Filed at Their Place of Origin**

Standard brings an apparently novel claim which rests almost entirely on foreign law. Not only does the Policy which Standard seeks to enforce contain a choice of law doctrine, but there is no indication that the relief Standard seeks is in any way cognizable under domestic law. It makes little sense for this Court to undertake the analysis of the central issue in this case – Standard's ability to enforce an insurance policy to which it is not a party – when an Australian court will likely repeat that same

analysis prior to any enforcement of an order of this Court. An essentially speculative sortie into Australian law by an American court does not make sense. As a result, this factor weighs in favor of an Australian forum.

### b. Burden of Jury Duty on Members of a Community with No Connection to the Litigation

Given the pending tort case against Pincock in this District, which has a Colorado connection, the burden of jury duty on members of the community is a neutral factor in this analysis.

### c. Local Interest in Having Localized Controversies Decided at Home

Standard argues that Colorado has a strong public interest in forcing insurance companies to abide by its obligations to the insured parties within the state. As evidence of this, Standard cites to Colorado statutes that intend to do just that. *See*, *e.g.*, Colo. Rev. Stat. Ann. § 10-5-101 *et seq.* (2008). However, these statutes are intended to protect insured parties as they themselves seek the coverage for which they contracted. That is not the case here. Pincock, the insured, is not attempting to force Vero to provide coverage. Standard's argument is further, and seriously, undercut by the fact that Colorado law does not allow the type of claim it brings. *See Farmers Ins. Exch. v. Dist. Court for the Fourth Judicial Dist.*, 862 P.2d 944, 949 (Colo. 1993); *Constitution Assocs. v. N.H. Ins. Co.*, 930 P.2d 556, 561-562 (Colo. 1996); *Synan v. Haya*, 15 P.3d 1117, 1119 (Colo. App. 2000). In other words, it rings hollow to argue that public policy in Colorado requires that this case be litigated here when Colorado does not permit such litigation.

Furthermore, this case is first and foremost an insurance case. It is about a policy negotiated and issued in Australia by an Australian company to an Australian company. Standard does not argue that its claim is cognizable under the laws of any jurisdiction in the United States. Instead, it brings a claim that turns entirely on the interpretation of Australian law.

Standard appears to face a significant legal barrier to proceeding with its claim against Vero. Whether on not it can clear that legal barrier is dependent on a determination under Australian law. Australian courts have an interest in deciding important issues of Australian law – such as whether its law can be used to expand standing to enforce insurance policies issued by its companies. Therefore, an Australian court should make this determination, and this factor weighs heavily in favor of an Australian forum.

### d. Appropriateness of Having Diversity Cases Tried in a Forum That Is Familiar with the Governing Law.

This factor also overwhelmingly favors an Australian forum. While it is true that federal courts in the United States are equipped to decide questions of foreign law, this case presents novel and important issues of Australian law that are more properly determined by an Australian court.

Therefore, having answered the two threshold questions of the *forum non conveniens* analysis in the affirmative, I find that the private and public interest factors when viewed as a whole tilt the balance strongly in favor of an Australian forum for this litigation. As a result, this case should be dismissed pursuant to the doctrine of *forum non conveniens*.

**B. Forum-Selection Clause**

Although I limited briefing on Vero's motion to dismiss to the *forum non conveniens* issue, both parties have fully briefed the issue of the Policy's forum-selection clause. *See* Vero's Mot. to Dismiss at 10; Pl. Standard Bank PLC's Resp. to the *Forum Non Conveniens* Portion of Def. Vero Insurance Limited's Mot. to Dismiss with Prejudice [Docket No. 69] ("Standard's Resp.") at 13-15; Reply in Supp. of Mot. to Dismiss on *Forum Non Conveniens* Grounds [Docket No. 74] at 8-12. The Policy's forum-selection clause is an alternative ground on which this case should be dismissed.

Where a motion to dismiss is based on the provisions of a forum-selection clause, courts often analyze the motion as one for dismissal for improper venue under Federal Rule of Civil Procedure 12(b)(3). *See Riley v. Kingsley Underwriting Agencies, Ltd.*, 969 F.2d 953, 956 (10th Cir. 1992). Generally, the analysis of a forum-selection clause can take two paths. In those instances where there is no question of the meaning of such a clause, and only its enforceability is at issue, the Supreme Court has spoken clearly and repeatedly in favor of enforcing the forum-selection clause. *Yavuz v. 61 MM, Ltd.*, 465 F.3d 418, 430 (10th Cir. 2006). Such a forum-selection clause is presumed valid and should be enforced by a court unless enforcement would be unreasonable under the circumstances. *See Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 589, 591 (1991) ("[A] freely negotiated private international agreement, unaffected by fraud, undue influence, or overweening bargaining power . . . should control absent a strong showing that it should be set aside." (quoting *The Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 12-13, 15 (1972)).

Although the Supreme Court, through *The Bremen*, *Carnival Cruise Lines*, and other similar cases, ordinarily requires courts to enforce an international commercial agreement's forum-selection clause, it does not instruct those courts on how to construe the clause itself. Regarding this – the second possible path in forum-selection clause analysis – the Tenth Circuit has determined that forum-selection clauses are to be "construed under the law specified in the agreement's choice-of-law provision." *Yavuz*, 465 F.3d at 430 (emphasis omitted). The rationale underlying this approach is that, where "the parties to an international contract agree on a forum-selection clause that has a particular meaning under the law of a specific jurisdiction, and the parties agree that the contract is to be interpreted under the law of that jurisdiction, then respect for the parties' autonomy and the demands of predictability in international transactions require courts to give effect to the meaning of the forum-selection clause under the chosen law, at least absent special circumstances (such as, perhaps, the chosen jurisdiction's refusal to hear a case that has no ties to the jurisdiction)." *Id.*

## C. The Policy's "Governing Law" Section

In the present case, the Policy's "Governing Law" section states in unambiguous and mandatory terms that the Policy "*shall be governed* in accordance with the laws of Australia." Vero's Mot. to Dismiss, Quentin Aff., The Policy at 20 (emphasis added). Therefore, as the parties appear to concede, Australian law governs this case. The remaining portion of the section – the alleged forum-selection clause – states, "Any disputes related to interpretation will be submitted to the exclusive jurisdiction of the

courts of Australia." *Id.* The parties disagree as to the effect and meaning of the clause and thus I must construe it under Australian law. *See Yavuz*, 465 F.3d at 430.

The parties seem to agree that, under Australian law, forum-selection clauses are widely enforced. *See*, *e.g.*, Standard's Resp., Ex. 1 (Aff. of Thomas F. Bathurst ("Bathurst Aff.")) ¶ 45 (citing *Huddart Parker Ltd. v. The Ship "Mill Hill"*, (1950) 81 CLR at 508-09). However, Standard's Australian law expert cites to examples of "exceptional circumstances" in which courts will decline to enforce an otherwise valid forum-selection clause. *Id.* ¶ 45. The example that Standard and its expert believe to be apropos is where there are ongoing, related proceedings in a forum not specified in the forum-selection clause. *Id.* ¶ 45 (citing *Incitec Ltd. v. Alkimos Shipping Corp.*, (2004) 138 FCR 496 at 43). However, for the reasons detailed in the *forum non conveniens* discussion, I do not believe the interests of efficiency, justice, or convenience require the Policy's forum-selection clause to be nullified. This conclusion is in line with the Tenth Circuit's intentions behind *Yavuz*, for it upholds the freely negotiated intent and expectations of the parties to the contract.

Standard argues that the forum-selection clause in the Policy, even if valid, is not relevant to the present case because the clause, by its terms, only covers "disputes related to interpretation" of the Policy. Standard contends that its case against Vero is not related to the interpretation of the Policy. Instead, according to Standard, the Policy is unambiguous and the present case only requires the application of the Policy to the complaint in Standard's case against Pincock. I find this position to be unavailing. Standard fails to make a cogent argument about how this Court could determine the

rights and responsibilities under the Policy without first ascertaining its meaning, in other words, *interpreting* it. The fact that Standard is asking the Court to compare the Policy with the language from sample policies available on Vero's website belies any contention that the Policy will not need to be interpreted. Standard's position is undermined still further by the fact that the policy in question contains seemingly contradictory clauses that could have a dramatic impact on this case. One clause appears to limit coverage to "claims made and actions brought *only* in Australia." Vero's Mot. to Dismiss, Quentin Aff., The Policy at 4 (emphasis added). Another clause purports to remove world-wide jurisdictional limits by allowing claims "brought in a court of law, arbitration, tribunal forum or other body entitled to impose enforceable orders against the insured in North America." *Id.* at 6. Lastly, the Policy's forum-selection clause broadly encompasses "*any*" disputes related to interpretation. For these reasons, I conclude that the present case does, in fact, fall within the purview of the Policy's forum-selection clause.

Standard also argues that the Policy's forum-selection clause is not relevant to its claims against Vero because Standard never agreed to the clause or to litigate in Australia. This argument accentuates a glaring inconsistency in Standard's approach. Standard claims that it has standing to enforce an insurance policy to which it is not a party, while simultaneously, and incongruously, claiming that it may disavow portions of that policy, for lack of privity, which could force dismissal of its claims.

Standard's only attempt at bridging this logical gap is its reliance on section 6 of the New South Wales Law Reform (Miscellaneous Provisions) Act of 1946. However, the parties' Australian law experts appear to disagree about the applicability and impact

19

of the New South Wales law, and it is not at all clear that an Australian court would allow such a tack. To hold otherwise would give Standard, a non-party to the contract, more rights under the instrument than Pincock, the entity that is a party to the Policy and in whose shoes Standard wishes to stand. As discussed above, any such innovations in Australian law are more properly achieved in Australia.

I also note that the cases that Standard cites for the proposition that it not be held to the forum-selection clause are not analogous to this case. *See*, *e.g.*, *Xantrex Technology Inc. v. Advanced Energy Indus.*, No. 07-cv-02324-WYD-MEH, 2008 WL 2185882 (D. Colo. May 23, 2008); *T.D. Williamson, Inc. v. Plant Servs., Inc.*, No. 06-CV-0089-CVE-PJC, 2006 WL 3085608 (N.D. Okla. Oct. 27, 2006); *Naegele v. Albers*, 355 F. Supp. 2d 129, 139 (D.D.C. 2005); *Gallenberg Equip., Inc. v. Agromac Int'l, Inc.*, 10 F. Supp. 2d 1050, 1052 (E.D. Wis. 1998). None of the cited cases involve situations in which a plaintiff attempted to enforce the beneficial provisions of a contract to which it is not a party and, at the same time, forswear those that it finds undesirable.

Therefore, in the alternative to dismissal on *forum non conveniens* grounds, I hold that the Policy's forum-selection clause governs, requiring a case such as this one, which involves interpretation of the Policy, to be filed in Australia. As a result, this case is dismissed for improper venue in accordance with Federal Rule of Civil Procedure 12(b)(3).

## III. CONCLUSION

As the foregoing discussion explained, dismissal of Standard's claims on *forum non conveniens* grounds is appropriate both because litigation in this venue establishes

oppressiveness and vexation to Vero which is out of all proportion with Standard's convenience and because of considerations affecting the court's own administrative and legal problems. Instead, I conclude that Australia is by far the more convenient and appropriate jurisdiction in which to litigate this claim. As a result, I exercise my discretion under the doctrine of *forum non conveniens* to dismiss the case. Furthermore, and in the alternative, the Policy under which Standard is seeking relief contains an enforceable forum-selection clause pursuant to the laws of Australia. That forum-selection clause requires that this case be filed in Australia. Therefore, dismissal is appropriate under Federal Rule of Civil Procedure 12(b)(3) as well. Accordingly, it is

**ORDERED** that defendant Vero Insurance Limited's "Motion to Dismiss with Prejudice" [Docket No. 22] is GRANTED in part and DENIED in part. It is further

**ORDERED** that Standard Bank PLC's complaint, and all claims asserted therein, against Vero Insurance Limited are dismissed without prejudice to their being asserted in an Australian forum. It is further

**ORDERED** that all other pending motions in this case [Docket Nos. 6, 55, 57] are DENIED as moot. It is further

**ORDERED** that the clerk shall forthwith enter judgment in favor of defendant Vero Insurance Limited and against plaintiff Standard Bank PLC. Defendant Vero

Insurance Limited may have its costs by filing a bill of costs within eleven days of the date of this order.

DATED February 24, 2009.

BY THE COURT:

s/Philip A. Brimmer
PHILIP A. BRIMMER
United States District Judge