IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Philip A. Brimmer**

Civil Action No. 08-cv-2127-PAB-KLM

STANDARD BANK PLC,

Plaintiff,

v.

VERO INSURANCE LIMITED,

Defendant,

RUNGE, INC. f/k/a
RUNGE MINING, INC. and d/b/a
PINCOCK ALLEN & HOLT,

Nominal Defendant.

_____

## ORDER VACATING JUDGMENT AND REMANDING CASE TO STATE COURT
_____

This matter comes before the Court on plaintiff Standard Bank PLC's motion to

amend [Docket No. 84] the Court's February 27, 2009 judgment in this case [Docket

No. 82].  Based on its stated grounds, plaintiff's motion is denied.  However, because

the Court's subject-matter jurisdiction over this case is otherwise deficient, the judgment

will be vacated and the case will be remanded to state court.

## I.  BACKGROUND

In this case, Standard Bank, a British corporation, brought suit against Vero

Insurance Limited, an Australian insurance company.  Standard Bank seeks relief from

Vero under a professional indemnity policy covering "nominal" defendant Runge, Inc., a

Colorado citizen.  Standard Bank seeks a declaration that would, in effect, force Vero to

defend and indemnify Runge in a separate action brought by Standard Bank in this

District.  *See Standard Bank PLC v. Runge Inc.*, No. 07-cv-1989-RPM.

    Standard Bank originally filed the present case in the District Court of Jefferson

County, Colorado on August 27, 2008.  *See* Verified Notice of Removal [Docket No. 1],

Ex. 1 (Compl. and Jury Demand).  On October 1, 2008, Vero removed the case to this

Court invoking 28 U.S.C. §§ 1332, 1441 and 1446.[1]  *See* Verified Notice of Removal at

1, 3.  On October 24, 2008, Vero filed a motion to dismiss which asserted four potential

grounds for dismissal of Standard Bank's claims: (1) *forum non conveniens* or,

alternatively, improper venue pursuant to a forum-selection clause; (2) lack of personal

jurisdiction over Vero; (3) failure to state a claim under Australian law; and (4) failure to

state a claim under Colorado law.  *See* Mot. to Dismiss with Prejudice [Docket No. 22].

By Minute Order of January 14, 2009 [Docket No. 53], and pursuant to *Sinochem Int'l

Co. v. Malaysia Int'l Shipping Corp.*, the Court limited the briefing on the motion to

dismiss to the *forum non conveniens* issue. 549 U.S. 422, 432 (2007) ("A district court .

. . may dispose of an action by a *forum non conveniens* dismissal, bypassing questions

of subject-matter and personal jurisdiction, when considerations of convenience,

fairness, and judicial economy so warrant.").

    On February 24, 2009, the Court issued an order [Docket No. 78] granting in part

and denying in part Vero's motion to dismiss.  The order dismissed the case without

---

[1] In its initial declarations in the notice of removal, Vero cites 28 U.S.C. § 1331 as a basis for this Court's removal jurisdiction.  *See* Verified Notice of Removal at 1. However, because Vero later discusses only diversity jurisdiction, making no reference to a federal question, the Court deems the reference to § 1331 to be a typographical error and § 1332 to be the intended basis for jurisdiction.

prejudice to the claim being asserted in an Australian forum based on the doctrine of *forum non conveniens* and, in the alternative, the presence of a forum-selection clause in the insurance policy at issue.  Judgment entered in this case on February 27, 2009 [Docket No. 82].

On March 13, 2009, Standard Bank filed a motion to amend the judgment under Federal Rule of Civil Procedure 59(e) [Docket No. 84].  Vero responded [Docket No. 86] and Standard Bank filed a reply in support of its motion [Docket No. 87].  The Rule 59(e) motion is, therefore, fully briefed and ripe for disposition.

## II.  ANALYSIS

### A.  Standard Bank's Motion to Amend the Judgment

A party may seek to amend a judgment under Federal Rule of Civil Procedure 59 as long as the motion is filed within ten days of the entry of judgment. Fed. R. Civ. P. 59(e).  However, because Rule 59(e) circumvents the normal appeals process, relief under the rule is strictly delimited: "Rule 59(e) relief is appropriate only where the court has misapprehended the facts, a party's position, or the controlling law." *Barber ex rel. Barber v. Colo. Dep't of Revenue*, 562 F.3d 1222, 1228 (10th Cir. 2009) (internal quotation marks omitted).

Although Standard Bank's motion under Rule 59(e) was filed in a timely manner, the motion does not entitle Standard Bank to the relief it seeks.  By failing to confer with opposing counsel prior to filing, Standard Bank's motion to amend is defective.  *See* D.C.COLO.LCivR 7.1A.  Although the Court may deny the motion based on this defect

alone, *see* Practice Standards (Civil Cases), Judge Philip A. Brimmer § III.B.1,

Standard Bank's substantive arguments are unavailing as well.

Standard Bank's Rule 59(e) motion does not argue that the Court, in its February

24, 2009 order dismissing this case, misapprehended the facts, a party's position, or

the controlling law.  Rather, Standard Bank raises for the first time an argument that

Vero's removal of this case from state court may be improper under 28 U.S.C. §

1332(c)(1) and, as a result, the Court may lack subject-matter jurisdiction over this

action.

Vero removed this case from Colorado state court asserting diversity jurisdiction,

presumably under the "direct action" provision of 28 U.S.C. § 1332(c).[2]  Direct actions

are permitted under the laws of only a handful of American states.  *See* 13F Charles

Wright, Arthur Miller, Edward Cooper, Richard Freer, Joan Steinman, Catherine Struve

& Vikram Amar, Federal Practice and Procedure § 3629 n.4 (3d ed. 2009) (hereinafter

"Wright & Miller").  Colorado is not one of them.  *See Constitution Assocs. v. New

Hampshire Ins. Co.*, 930 P.2d 556, 561-562 (Colo. 1996).  Standard Bank's complaint,

however, contends that it is permitted to bring such an action under Australian law.

Rather than address the merits of this assertion, the Court dismissed the case under

---

[2] Section 1332(c)(1) explains "in any direct action against the insurer of a policy or contract of liability insurance, whether incorporated or unincorporated, to which action the insured is not joined as a party-defendant, such insurer shall be deemed a citizen of the State of which the insured is a citizen, as well as of any State by which the insurer has been incorporated and of the State where it has its principal place of business . . . ."  In a "'direct action' . . . a party suffering injuries or damage for which another is legally responsible is entitled to bring suit against the other's liability insurer without joining the insured or first obtaining a judgment against him."  *Beckham v. Safeco Ins. Co. of Am.*, 691 F.2d 898, 901-02 (9th Cir. 1982).

the doctrine of *forum non conveniens* and, in the alternative, for improper venue due to a forum-selection clause in the insurance policy in question.  Standard Bank argues in its Rule 59(e) motion that, by opting not to make a definitive holding regarding whether Australian law permits direct actions, the Court called into question its subject-matter jurisdiction under § 1332, which was premised upon the existence of a direct action. Standard Bank believes that, in the face of such uncertainty regarding subject-matter jurisdiction, the Court should have remanded the case to state court rather than dismissed it.

The Court is unpersuaded.  For one thing, the Tenth Circuit has noted that in cases such as the present one, where subject-matter jurisdiction is closely intertwined with the substantive claims of a case, the case is best resolved on the merits. *See Holt v. United States*, 46 F.3d 1000, 1003 (10th Cir. 1995). "When subject matter jurisdiction is dependent upon the same statute which provides the substantive claim in the case, the jurisdictional claim and the merits are considered to be intertwined." *Wheeler v. Hurdman*, 825 F.2d 257, 259 (10th Cir. 1987).  Here, the Court determined that the proper venue for resolving the merits of the claim was in Australia and, therefore, dismissed the case without prejudice to the claim being asserted in an Australian forum.

Furthermore, as noted previously, the Court's approach finds support in the Supreme Court's holding in *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422 (2007).  The Court in *Sinochem* held that a district court may dispose of a case under *forum non conveniens* without establishing subject-matter or personal jurisdiction where the latter issues present difficult or burdensome inquiries.  *Sinochem Int'l Co.*,

549 U.S. at 432, 436.  Here, with the § 1332(c)(1) inquiry – whether Australian law permitted a direct action – being so closely intertwined with the merits of the claims, the Court faced a difficult and burdensome subject-matter jurisdiction analysis.  The personal jurisdiction question also was fraught with potential cost and delay.  The *forum non conveniens* issue was the most straightforward of the analyses, and thus the Court turned to it first as serving the interests of convenience, fairness, and judicial economy.

Standard Bank now argues that the Court should not have applied *Sinochem* to this case because this case was removed from state court and therefore, unlike *Sinochem*, the Court had the option of remanding this case to state court, where it was originally filed.  *Cf. Provincial Gov't of Marinduque v. Placer Dome, Inc.*, 582 F.3d 1083, 1088 (9th Cir. 2009) (stating in dictum that application of *Sinochem* may be inappropriate in removal cases).

I disagree that removal cases are materially different from cases originally filed in a federal court.  Moreover, the present case does not provide the Court with the occasion to decide whether some removal cases are properly exempted from *Sinochem*.  At the very least, it is clear that not all removal cases should be exempted. In particular, cases such as the present one, where the substantive claims are closely intertwined with the § 1332(c)(1) subject-matter jurisdiction issue, fall within the scope of *Sinochem*.  Deciding otherwise would require courts in these circumstances to determine the merits of a case through a difficult and burdensome subject-matter jurisdiction analysis without first addressing issues of personal jurisdiction or the convenience of the forum.  It is precisely this type of inefficiency that prompted the

6

Supreme Court's ruling in *Sinochem*.  Therefore, Standard Bank has not presented a sufficient basis for amendment of the judgment in this case.

Although the Court is unpersuaded by Standard Bank's arguments, its Rule 59(e) motion has preserved the Court's jurisdiction over this case and has given the Court occasion to re-examine the issue of diversity jurisdiction.  The Court has an independent duty to assure itself of its jurisdiction at every stage of litigation, regardless of the propriety of the motion broaching the issue.  *See Thompson v. United States*, 291 F.2d 67, 68 (10th Cir. 1961).  Because this inquiry has uncovered additional concerns, the Court now takes up more generally the question of its subject-matter jurisdiction.

## B.  Diversity Jurisdiction

In every case and at every stage of a proceeding, a federal court must satisfy itself as to its jurisdiction over a matter, even if doing so requires the Court to address issues outside those raised by the parties.  *See Citizens Concerned for Separation of Church & State v. City & County of Denver*, 628 F.2d 1289, 1297, 1301 (10th Cir. 1980).  The Court's duty persists beyond the entry of judgment.  *See Basso v. Utah Power & Light Co.*, 495 F.2d 906, 910 (10th Cir. 1974); *see also* 16A Wright & Miller § 3949.1 n.27 (3d ed. 2009) (citing *Lupo v. Human Affairs Int'l, Inc.*, 28 F.3d 269, 271-272 (2d Cir. 1994)).

Standard Bank's complaint against Vero sought to enforce a contract to which it is neither a party nor a third-party beneficiary.  However, Standard Bank asserts that it is permitted to bring a "direct action" against Vero as the insurer of Runge under an

Australian law: Section 6 of the New South Wales Law Reform (Miscellaneous

Provisions) Act of 1946.  As noted above, Congress has accounted for direct actions

against insurers in the jurisdictional statutes of the United States district courts:

> in any direct action against the insurer of a policy or contract of liability
> insurance, whether incorporated or unincorporated, to which action the
> insured is not joined as a party-defendant, such insurer shall be deemed a
> citizen of the State of which the insured is a citizen, as well as of any
> State by which the insurer has been incorporated and of the State where it
> has its principal place of business.

28 U.S.C. § 1332(c)(1) (2006).

The parties appear to agree that, absent the "direct action" clause in §

1332(c)(1), the Court may not exercise diversity jurisdiction over this matter.  They are

only partly correct.  It is true that the Court would lack diversity jurisdiction over these

litigants if Standard Bank may not bring a direct action claim.  However, what the

parties fail to recognize is that the Court would lack diversity jurisdiction even if

Standard Bank was so permitted.

First, if Standard Bank is prohibited from bringing a direct action under an

applicable law, under no set of circumstances would the Court have subject-matter

jurisdiction over this case.  For example, if no direct action is possible, this case may be

deemed to be between an alien plaintiff, Standard Bank, and an alien defendant, Vero,

with Runge as a true "nominal defendant" whose citizenship may be ignored, *see*

*Navarro Sav. Ass'n v. Lee*, 446 U.S. 458, 461 (1980) ("[A] federal court must disregard

nominal or formal parties and rest jurisdiction only upon the citizenship of real parties to

the controversy.").  Such an action, which involves only citizens of foreign countries,

would fall outside the Court's diversity jurisdiction.  *See Grupo Dataflux v. Atlas Global*

*Group, L.P.*, 541 U.S. 567, 569 (2004) ("complete diversity" was lacking where aliens are on both sides of a case without United States citizens also on both sides); *Gschwind v. Cessna Aircraft Co.*, 232 F.3d 1342, 1345 (10th Cir. 2000) ("On its face, § 1332(a) does not vest the district court with jurisdiction over actions between parties only of foreign citizenship.").

The Court is doubtful, however, that Runge is properly considered a "nominal" party to this action. A "nominal" party is one "without any substantial interest in the controversy." *Oklahoma ex rel. Williams v. Oklahoma Natural Gas Corp.*, 83 F.2d 986, 988 (10th Cir. 1936); *see also* Black's Law Dictionary 1154 (8th ed. 2004) (defining "nominal party" as "[a] party to an action who has no control over it and no financial interest in its outcome; [especially], a party who has some immaterial interest in the subject matter of a lawsuit and who will not be affected by any judgment, but who is nonetheless joined in the lawsuit to avoid procedural defects."). Runge has appeared and actively participated in the case, has opposed Standard Bank's requested relief, has opted not to seek coverage directly under the policy in question, and has been accused by Standard Bank of purposely failing to file a claim under the policy so that the funds would be available elsewhere. Therefore, it appears that Runge has real legal interests at stake in this litigation and should not be considered "nominal" despite Standard Bank's assertions to the contrary. *Cf. Rush v. Savchuk*, 444 U.S. 320, 331 & n.20 (1980) (raising similar doubts and noting that insured persons often have legal interests in litigation about their insurance policies that extend beyond mere out-of-pocket liability).

9

Ultimately, however, the true status of "nominal" defendant Runge does not affect the present analysis.  Even if Runge is considered to be a real party in interest in the case, the Court would not have diversity jurisdiction because an alien plaintiff would be bringing suit against an alien defendant and a domestic defendant.[3]  The parties would not be completely diverse under § 1332(a) and, as a result, the Court would not have jurisdiction.  *See Gschwind*, 232 F.3d at 1345 (courts interpreting § 1332(a)(2) require "United States citizens on both sides of an action between foreign citizens").

Under the second scenario – i.e., if Standard Bank is permitted to bring a direct action against Vero – the result is no different.  Assuming that Runge is properly deemed a "nominal" defendant, its Colorado citizenship would not be considered directly.  *See Vigreaux v. Cuny*, No. 69-360, 1996 WL 539958 (E.D. La. Sept. 24, 1996).  However, pursuant to § 1332(c)(1), Vero would "be deemed a citizen of the State of which the insured is a citizen," in this case Colorado, as well as a citizen of Australia.  As discussed above, the Court would not have diversity-based jurisdiction over such an arrangement due to the presence of a lone alien on the other side of the litigation.  *See Gschwind*, 232 F.3d at 1345.

The reason the parties believe that "complete diversity" would exist if Standard Bank is permitted to bring a direct action against Vero is because they incorrectly assume that under § 1332(c)(1) Vero, the insurer, would lose its alien citizenship and

---

[3] If Runge is considered to be a party-defendant rather than a "nominal" defendant, the text of § 1332(c) would preclude the application of the direct action clause – "in any direct action against the insurer of a policy or contract of liability insurance . . . *to which action the insured is not joined as a party-defendant*."  28 U.S.C. § 1332(c)(1) (2006) (emphasis added).

be deemed to be a citizen of Colorado only.  This is not the case.  *See* 13F Wright &

Miller § 3628 (3d ed. 2009) ("[I]n direct action suits . . . alien corporations are treated as

citizens of the state of the insured as well as of the foreign state of incorporation for

purposes of determining diversity of citizenship jurisdiction."); *cf. Indiana Gas Co., Inc.*

*v. Home Ins. Co.*, 141 F.3d 314, 317 (7th Cir. 1998) (noting in dictum that alien

insurance underwriting syndicates "could have other citizenships as well. . . . In direct

actions insurers have not only their normal citizenship(s), but also the citizenship(s) of

the insured.").

Although it appears that no federal court, other than the dictum in *Indiana Gas*

*Co.*, has dealt directly with this point, precedent and logic dictate such a result.  I start

by noting that some of the language describing the direct action clause can be

deceivingly absolute.  For example, the Congressional declaration regarding the

passage of the 1964 amendment, which added the direct action clause to § 1332(c),

explained that it was enacted "to eliminate under the diversity jurisdiction of the U.S.

district courts, suits on certain tort claims in which both parties are local residents, but

which, under a State 'direct action' statute, may be brought directly against a foreign

insurance carrier without joining the local tort-feasor as a defendant."  S. Rep. No. 88-

1308, 1 (1964); U.S. Code Cong. & Admin. News 1964, pp. 2778-2779; *see also*

*Northbrook Nat. Ins. Co. v. Brewer*, 493 U.S. 6, 10 (1989).  The caselaw has tracked

with this general statement.  *See, e.g., Crescent City Pediatrics v. Bankers Ins. Co.*,

459 F. Supp. 2d 510, 513 (E.D. La. 2006) ("[T]he direct action proviso of § 1332(c)(1)

has the effect of denying federal diversity jurisdiction only in cases where the plaintiff

and the defendant insurer are citizens of different states, but the plaintiff and the insured tortfeasor are citizens of the same state." (internal quotation marks omitted)).

These statements are inapplicable to scenarios such as the present one where an alien plaintiff brings suit against an alien insurer of a local party.  In fact, on their face, neither the Congressional statement of purpose nor the statute itself explicitly accounts for alien insurers, alien insureds, or the direct action statutes of foreign countries.  Nor do the cases cited above contemplate such scenarios.

However, when directly faced with situations involving alien parties, courts have repeatedly found that § 1332(c)(1) applies to foreign entities.  For example, the weight of authority holds that the initial portion of § 1332(c)(1), which deals with corporate citizenship generally, while not explicitly discussing alien corporations, applies to them nonetheless.  *See, e.g.*, *Slavchev v. Royal Caribbean Cruises, Ltd.*, 559 F.3d 251, 254 (4th Cir. 2009) (holding that an alien corporation with a domestic principal place of business has both alien and domestic citizenships for purposes of § 1332); *Danjaq, S.A. v. Pathe Commc'ns Corp.*, 979 F.2d 772, 773-774 (9th Cir. 1992) (same); *Vareka Invs., N.V. v. American Inv. Props., Inc.*, 724 F.2d 907, 909 (11th Cir. 1984) (same); *Jerguson v. Blue Dot Inv., Inc.*, 659 F.2d 31, 35 (5th Cir. 1981) (same); *Phoenix Four, Inc. v. Strategic Res. Corp.*, 446 F. Supp. 2d 205, 213 (S.D.N.Y. 2006) (same); *Simon Holdings PLC Group of Cos. U.K. v. Klenz*, 878 F. Supp. 210, 213 (M.D. Fla. 1995) (same); *Southeast Guar. Trust Co., Ltd. v. Rodman & Renshaw, Inc.*, 358 F. Supp. 1001, 1006-07 (N.D. Ill. 1973) (same).  Other courts have held that § 1332(c)(1)'s direct action clause applies to alien insurers where a local plaintiff brings a direct action

12

against the alien insurer of a local tortfeasor.  *See Newsom v. Zurich Ins. Co.*, 397 F.2d 280, 281-82 (5th Cir. 1968); *Narvaez v. British Am. Ins. Co.*, 324 F. Supp. 1324, 1325 (D.P.R. 1971).

The overarching principle that appears to drive these conclusions is that Congress intended § 1332(c)(1) to operate, in all respects, as a limit on, not an expansion of, federal-court jurisdiction.  *See Newsom*, 397 F.2d at 281-82; *Southeast Guar. Trust Co., Ltd.*, 358 F. Supp. at 1007 ("By enacting § 1332(c), Congress sought to preclude any technical finding of diversity, when, in fact, no such diversity existed."). This interpretation comports with the directive that jurisdictional statutes must be construed narrowly.  *See American Fire & Cas. Co. v. Finn*, 341 U.S. 6, 17-18 (1951) ("The jurisdiction of the federal courts is carefully guarded against expansion by judicial interpretation or by prior action or consent of the parties.").

What is clear from the legislative history and the text of the direct action clause in § 1332(c)(1) is that Congress intended to foreclose diversity jurisdiction based on the idiosyncracies of insurance law.  Only through disjointed reasoning could the Court find that Congress intended the direct action clause to eliminate the alien citizenship of an insured, thereby providing jurisdiction in cases where it would otherwise not exist. Instead, the more defensible interpretation is that Congress intended for courts to treat direct actions as imposing a fiction upon the case, namely, that both the insurer and the insured are defendants for purposes of a diversity determination.  Congress indicated this by limiting the direct action clause to situations where the "insured is not joined as a party-defendant."  28 U.S.C. § 1332(c)(1) (2006).  Therefore, for purposes of diversity jurisdiction, the direct action clause in § 1332(c)(1) imputes upon an alien insurer the

13

citizenship of its insured, in addition to maintaining the insurer's alien citizenship.[4]  In cases such as the present one, where a party invokes the direct action clause of § 1332(c)(1), the clause will operate to restrict, not broaden, the Court's diversity jurisdiction and the defendant insured will maintain its own citizenship while assuming and adding the citizenship of its insured.

In summary, no matter how one approaches this case, on one side there is an alien plaintiff, Standard Bank, and on the other side there is an alien defendant, Vero. Regardless of the way in which the Colorado citizenship of Runge is considered, this litigation fails to evince the "complete diversity" that is required for the Court's jurisdiction under 28 U.S.C. § 1332(a).  *See Owen Equip. & Erection Co. v. Kroger*, 437 U.S. 365, 373-74 (1978).  Because there is no other basis for this Court's jurisdiction, the case must be remanded to state court.  *See Cunningham v. BHP Petroleum Great Britain PLC*, 427 F.3d 1238, 1245-46 (10th Cir. 2005).

## III. CONCLUSION

As discussed above, the Court's diversity jurisdiction over this case has been deficient from the outset.  Because the Court "can readily determine that it lacks jurisdiction over the cause" without resorting to the merits of the case, *Sinochem Int'l Co.*, 549 U.S. at 436, it is more appropriate to remand this matter without addressing

---

[4] In discussing the corporate citizenship clause of § 1332(c)(1), another judge in this District observed that § 1332(c)(1) operates this way in other circumstances: "while an alien corporation may add the United States as an additional place of citizenship for diversity purposes if its principal place of business is in the United States, it does not lose its foreign citizenship based upon the location of incorporation."  *Oteng v. Golden Star Res., Ltd.*, 615 F. Supp. 2d 1228, 1234 (D. Colo. 2009); *see also Indiana Gas Co., Inc. v. Home Ins. Co.*, 141 F.3d 314, 317 (7th Cir. 1998) ("In direct actions insurers have not only their normal citizenship(s), but also the citizenship(s) of the insured.").

the issues of *forum non conveniens* and the propriety of venue.  Given that the Court

lacked subject-matter jurisdiction over this case from the outset, all orders must be

vacated and the case must be remanded to state court.  *See Cunningham*, 427 F.3d at

1245-46.  Therefore, it is

      **ORDERED** that defendant Standard Bank PLC's motion to amend the judgment

[Docket No. 84] is DENIED.  It is further

      **ORDERED** that, because the Court has independently determined that it lacks

subject-matter jurisdiction over this case under § 1332(a), the Court's previous orders,

the judgment [Docket No. 82], and the taxation of costs [Docket No. 94] are VACATED

and the case is remanded to the district court for Jefferson County, Colorado, where it

was initially filed as Civil Action No. 08CV3710, Division 4.

      DATED December 7, 2009.

                        BY THE COURT:

                        s/Philip A. Brimmer
                        PHILIP A. BRIMMER
                        United States District Judge